AO 91 (Rev. 11/11)  Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT
10/27/25
CENTRAL DISTRICT OF CALIFORNIA
BY:＿＿＿ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/27/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ＿＿clee＿＿ DEPUTY

| United States of America | ) | |
| v. | ) | |
| MIGUEL ADRIAN GONZALEZ | ) | Case No.  2:25-mj-06677-DUTY |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ＿＿October 24, 2025＿＿ in the county of ＿＿Los Angeles＿＿ in the ＿＿Central＿＿ District of ＿＿California＿＿ , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 2252A(a)(5)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

＿＿＿＿/s/＿＿＿＿
*Complainant's signature*

Special Agent Victoria Scott, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ＿＿October 27, 2025＿＿

*Judge's signature*

City and state:  ＿＿Los Angeles, California＿＿

HON. STEVE KIM, U.S. MAGISTRATE JUDGE
*Printed name and title*

*AUSA:*  Kelsey A. Stimson x8230

## AFFIDAVIT

I, Victoria J. Scott, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.    I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), in Los Angeles, California, and I have been so employed since June 2019.  I am currently assigned to HSI Ventura, which is tasked with investigating federal crimes involving child exploitation, child pornography, cybercrimes, immigration crimes, human rights violations and human smuggling, smuggling of narcotics, weapons and other types of contraband, financial crimes, and various other violations of immigration and customs laws.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") HSI Special Agent Training program, where I received formalized instruction about the nature of child exploitation and child pornography, and how to investigate these cases.

2.    I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses.

3.    Since graduating from FLETC, I have received additional training regarding investigating child exploitation and child pornography and have had the opportunity to observe and review various examples of child pornography in all forms of media including computer media. In addition, I have participated

in the execution of several search warrants that involved child exploitation and/or child pornography offenses. Assisting with these search warrants has given me an understanding of how people involved with offenses relating to the sexual exploitation of children use the Internet and other digital platforms to further those offenses. Finally, I have spoken to other experienced law enforcement officers concerning the results of their own investigations into child sex trafficking cases and cases in which adults entice children to engage in sex acts in exchange for items of value, and the methods and practices of people who commit such crimes.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint and arrest warrant against MIGUEL ADRIAN GONZALEZ ("GONZALEZ") for a violation of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography).

5. This affidavit is also made in support of an application for a warrant to search the following digital devices, seized from GONZALEZ's person and backpack on his person during his arrest on October 24, 2025, and which are currently in the custody of Los Angeles Police Department Internet Crimes Against Children ("LAPD ICAC") task force in Long Beach, California, as described more fully in Attachment A:

a. A dark blue Apple iPhone 12 with a cracked screen with IMEI 351793393077149 ("SUBJECT DEVICE 1");

b. A dark gray iPhone 16 Pro with IMEI 356295607663420 ("SUBJECT DEVICE 2");

      c.    A white iPhone 14 with IMEI 355683578099354 ("SUBJECT DEVICE 3"); and

      d.    A silver Apple laptop model A1466 with serial number C1MPN9C0G940 ("SUBJECT DEVICE 4") (collectively, the "SUBJECT DEVICES").

6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

### III. <u>PROPERTY TO BE SEARCHED</u>

7.    The property to be searched are the **SUBJECT DEVICES** described in Attachment A, which is incorporated herein by reference.

### IV. <u>ITEMS TO BE SEIZED</u>

8.    The items to be seized are the evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(5)(B) (Possession of Child Pornography); 2252A(a)(2)(A) (Distribution of Child Pornography); 2251(a), (e) (Production of Child Pornography); 2251A(b) (Buying or Selling of Children); and 2251(a) (Enticement) (the "Subject Offenses"),

as described in Attachment B, which is incorporated by reference.

### V. <u>SUMMARY OF PROBABLE CAUSE</u>

12.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

13.  From at least in or about 2020 and continuing through at least in or about 2025, GONZALEZ, who is a long-time childcare provider and private babysitter, took photographs and videos of children in his care or supervision that exposed their genitalia, thus creating child sexual abuse material ("CSAM"). In addition, GONZALEZ touched the genitalia of at least one minor victim.

14.  In addition, from at least in or about October 2022, and continuing through at least in or about April 2025, GONZALEZ used social media platforms such as SnapChat and Instagram to obtain images and videos from male minors depicting CSAM, and to receive and distribute images depicting CSAM of children he babysat to other like-minded individuals.

15.  On October 24, 2025, LAPD ICAC arrested GONZALEZ pursuant to a state arrest warrant for California Penal Code Section 311.11(a) (possession of child pornography) and, pursuant to a state search warrant for his person, seized the SUBJECT DEVICES.  During GONZALEZ's post-arrest interview, he confessed to producing CSAM of approximately five minor male victims, including two minor male victims whom he had been babysitting.  During a preliminary review of GONZALEZ's devices,

investigators located CSAM images of at least two identified minor victims ("MV-2" and "MV-3"), as well as CSAM images of other possible victims.

## VI.  BACKGROUND ON CHILD EXPLOITATION OFFENSES, COMPUTERS, THE INTERNET, AND DEFINITION OF TERMS

9.   In this affidavit, the terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined as set forth in 18 U.S.C. § 2256.  The term "computer" is defined as set forth in 18 U.S.C. § 1030(e)(1).

10.  Based upon my training and experience in the investigation of child pornography, and information relayed to me by other law enforcement officers involved in the investigation of child pornography, I know the following information about the use of computers with child pornography:

a.   File Storage.  Computer users can choose their method of storing files: either on a computer's hard drive, an external hard drive, a memory card, a USB thumb drive, a smart phone or other digital media device, etc. (i.e., "locally") or on virtual servers accessible from any digital device with an Internet connection (i.e., "cloud storage").  Computer users frequently transfer files from one location to another, such as from a phone to a computer or from cloud storage to an external hard drive.  Computer users also often create "backup" or duplicate copies of their files.  In this way, digital child pornography is extremely mobile and such digital files are easily reproduced and transported.  For example, with the click

of a button, images and videos containing child pornography can be put onto external hard drives small enough to fit onto a keychain. Just as easily, these files can be copied onto compact disks and/or stored on mobile digital devices, such as smart phones and tablets, or printed or otherwise transferred to a physical file. Furthermore, even if the actual child pornography files are stored on a "cloud," files stored in this manner can only be accessed via a digital device. Therefore, viewing this child pornography would require a computer, smartphone, tablet, or some other digital device that allows the user to access and view files on the Internet.

b.    Internet Service Providers. Individuals and businesses obtain access to the Internet through ISPs. ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customer's behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or businesses that have subscriber accounts with them. Those records often include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, and other information both in computer data and written record format.

c.  IP Addresses.  An Internet Protocol address ("IP Address") is a unique numeric address used to connect to the Internet.  An IPv4 IP Address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). In simple terms, one computer in a home may connect directly to the Internet with an IP Address assigned by an ISP.  What is now more typical is that one home may connect to the Internet using multiple digital devices simultaneously, including laptops, tablets, smart phones, smart televisions, and gaming systems, by way of example.  Because the home subscriber typically only has one Internet connection and is only assigned one IP Address at a time by their ISP, multiple devices in a home are connected to the Internet via a router or hub.  Internet activity from every device attached to the router or hub is utilizing the same external IP Address assigned by the ISP.  The router or hub "routes" Internet traffic so that it reaches the proper device. Most ISPs control a range of IP Addresses.  The IP Address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP Address is only assigned for the duration of that online session.  Most ISPs maintain records of which subscriber was assigned which IP Address during an online session.

11.  The following are definitions of terms used herein:

i.  "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short to enable other participants to respond quickly and in a

7

format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

        ii.  "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

        iii. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where: (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. Child pornography is sometimes abbreviated as "CP."

        iv.  "Child Sexual Abuse Material" ("CSAM"), as used herein, is a term generally used to describe images and videos depicting the sexual exploitation and/or abuse of children.  In common practice, investigators use the term CSAM to describe sexually exploitative images and videos of children,

unless describing a specific violation where the definition of Child Pornography as defined in 18 U.S.C. § 2256(8) is required.

v.    "Log files" are records automatically produced by computer programs to document electronic events that occur on computers.  Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.  Logs are often named based on the types of information they contain.  For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

vi.    "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

vii. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

## VII. <u>TRAINING & EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN</u>

42.   Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of CSAM or child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a.   Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.  These individuals often maintain possession of these items for long periods of time and keep their collections in numerous places -- in digital devices in their homes, in their cars, in their workplaces, or on their persons.

b.   Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials (including through digital distribution via the Internet); conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share

the same interests in child pornography.  These individuals often maintain possession of these items for long periods of time.

43.  Digital child pornography on a digital device is easy to maintain for long periods of time.  Modern digital devices often have extremely large storage capacities.  Furthermore, cheap and readily available storage devices, such as thumb drives, external hard drives, and compact discs make it simple for individuals with a sexual interest in children to download child pornography from the Internet and save it -- simply and securely -- so it can be accessed or viewed indefinitely.

Furthermore, even if a person deleted any images of child pornography that may have been possessed or distributed, there is still probable cause to believe that there will be evidence of the illegal activities -- that is, the possession, receipt, and/or distribution of child pornography.  Based on my training and experience, as well as my conversations with digital forensic experts, I know that remnants of such files can be recovered months or years after they have been deleted from a computer device.  Evidence that child pornography files were downloaded and viewed can also be recovered, even after the files themselves have been deleted, using forensic tools. Because remnants of the possession, distribution, and viewing of child pornography is recoverable after long periods of time, searching the devices found on GONZALEZ's person could lead to evidence of the child exploitation offenses.

## VIII.    <u>STATEMENT OF PROBABLE CAUSE</u>

16.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    Online Account Linked to GONZALEZ Enticed MV-1 to Produce CSAM**

17.  In September 2025, I received information from HSI Kentucky regarding GONZALEZ enticing an 11-year-old minor male victim ("MV-1") to produce images and videos portraying CSAM via SnapChat.  From my review of HSI Kentucky reports, I learned the following:

a.  In January 2025, HSI Kentucky received a lead from the HSI Cyber Crimes Center ("HSI C3") regarding images and videos portraying CSAM involving MV-1.[1]  In February 2025, HSI Kentucky conducted a forensic interview of MV-1, and generated a report of that interview that I have reviewed.  During the interview, MV-1 provided the following information:

i.  In or about 2021, MV-1 was following instructions for what appeared to him to be a gift card giveaway on TikTok when MV-1 was instructed to message a Snapchat user by the name of "PHEONIXV".  While privately messaging PHEONIXV on Snapchat, PHEONIXV instructed MV-1 to send nude photos and videos or PHEONIXV would come to MV-1's home and harm MV-1.

---

[1] HSI C3 often receives leads from foreign law enforcement from undercover or dark net investigations when American victims are identified.  In this instance, MV-1's photos (but not their source) were discovered during a Garda National Cyber Crime Bureau (Ireland) investigation.

PHEONIXV sent MV1's address to MV-1 on Snapchat as part of the threat.

      ii.   PHEONIXV instructed MV-1 to download an application and add PHEONIXV on the application so they could communicate secretly.[2]  On the unidentified application, by voice recording and text, PHEONIXV instructed MV-1 on what to do in each video, using the eggplant emoji to refer to MV-1's penis and a peach to refer to MV-1's buttocks.  PHEONIXV instructed MV-1 to place his finger in his rectum, as depicted in the video described below, and to look happy and call him "Phoenix" and "daddy."  These SnapChat messages were not recoverable from MV-1's digital device or from SnapChat, but MV-1 confirmed the CSAM videos obtained by HSI C3 were the videos he sent to PHEONIXV.

      iii. MV-1 also used iMessage to communicate with PHEONIXV.  At least some of these messages are preserved, as discussed below.

      b.   MV-1's mother gave consent to search MV-1's device.  In March 2025, MV-1's mother called HSI Kentucky and stated MV-1 remembered PHEONIXV's email address used in their iMessage conversation to be "kidfr3sh."[3]

---

[2] MV-1 described the icon for the application but did not remember the name of the application.  I have compared the description to icons for numerous applications, and while some resemble the description, such as Discord, none are a clear match.

[3] MV-1 also told his mother who told investigators that he remembered PHEONIXV's iMessage display name to begin with "KD." As discussed herein, when law enforcement conducted a preliminary review of of the SUBJECT DEVICES on October 24, 2025, GONZALEZ's iCloud account name was listed as "KD Byft."

c.   During HSI Kentucky's search of MV-1's iPad, agents located iMessages between MV-1 and email address kidfr3sh20@me.com with the username PHEONIXV.  Agents also located a password saved in the "keychain"[4] for an access group entitled "com.apple.rapport" under the account name of kidfr3sh20@icloud.com.

d.   According to Apple records obtained by HSI Kentucky, the following identifiers were associated with the "kidfr3sh" Apple and/or iCloud accounts:

i.   Name(s): Adrian GONZALEZ; Miguel GONZALEZ;

ii.   Phone number(s): 203-824-9385 (the "-9385 Number"); and

iii.   Emails: adriang0622@gmail.com; kidfr3sh20@gmail.com; kidfr3sh20@icloud.com.

18.   I reviewed the images and videos of MV-1 discussed above, which were sent by HSI C3 to HSI Kentucky, then to me. The files depict a minor engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256, including the following:

| File Name: | VID_20221017_174554_571.mp4.mov.mp4 |
|---|---|
| Description: | The video depicts MV-1 fully nude sitting on what appears to be a bathroom floor.  During the video MV-1 proceeds to masturbate and digitally penetrate his anus. |

---

[4] Keychain is a password management system developed by Apple for macOS and iOS to securely store sensitive data like passwords, certificates, encryption keys, and credit card numbers. Keychain Access is a built-in macOS app that allows users to view and manage the information stored in their keychain.

| File Name: | VID_20221017_174559_533.mp4.mov.mp4 |
|---|---|
| Description: | The video depicts MV-1 fully nude sitting on what appears to be a bathroom floor.  During the video MV-1 can be seen masturbating. |

**B.    Account Linked to GONZALEZ Distributed CSAM of MV-2**

19.  Based on my review of NCMEC CyberTipline Report #209215659 and conversations with LAPD ICAC Officer Erik Powers, I am aware that in April 2025, LAPD ICAC received NCMEC CyberTipline Report #209215659,[5] which was reported by SnapChat and contained one image of suspected child pornography of MV-2, who was identified as discussed in the next Section.  The report listed the suspect account as associated with the -9385 Number, as well as the following additional identifiers:

    a.    Screen/Username: js_102

    b.    Date of Birth: 06-22-1997[6]

---

[5] Based on my experience as a law enforcement officer, I know the following about the National Center for Missing and Exploited Children ("NCMEC"): NCMEC functions as a national clearinghouse for information on missing and exploited children and the sexual exploitation of children. Electronic Service Providers ("ESPs") and members of the public can report suspected child exploitation to NCMEC through its CyberTipline. ESPs include companies such as Discord and Meta Platforms, which provide free and paid services online. These services may include email, instant messaging, social networking, and online file transfer or storage. NCMEC provides information to law enforcement agencies through CyberTipline Reports.  ESPs may discover suspected child exploitation files through user reports, automated scanning of a hash value associated with a particular file depicting child pornography, and other methods.

[6] According to California Department of Motor Vehicle (CA DMV) records and multiple departmental databases, GONZALEZ's date of birth is June 22, 1997.

  c. Email Address: kidfr3sh20@gmail.com

  d. IP Address: 104.174.146.86

20. On September 15, 2025, HSI Special Agent Jianna Zeolla submitted a DHS summons to AT&T for the -9385 Number.  According to my review of AT&T records received, phone -9385 has been subscribed to Miguel A. GONZALEZ at an address in East Haven, Connecticut, since January 9, 2019.  AT&T provided the following email addresses associated with the -9385 Number: absolutelyadrianofficial@gmail.com and adrian0622@gmail.com.

21. On September 17, 2025, HSI Special Agent Zeolla submitted a DHS summons to Charter Communications for the IP Address listed in the April 2025 CyberTipline report: 104.174.146.86.  Based on my review of the Charter Communications records, IP address 104.174.146.86 is subscribed to W.B.[7] at a residence on W. 87th Place in Los Angeles, California 90045.[8]

**C. Identification of MV-2**

22. Based on my conversations with LAPD ICAC Officer Powers, my review of LAPD reports, and my own knowledge of this investigation, I know the following:

  a. On October 17, 2025, LAPD ICAC obtained and served state search warrant number 25-1942-024491 to AT&T, Google LLC, Snap, Inc., and Charter for accounts with the following identifiers:

---

[7] Law enforcement has W.B.'s full name.

[8] As of the date of this warrant, GONZALEZ's association to W.B. or the address is unknown.  Based on publicly available Facebook posts, W.B. appears to have two young children.

          i.   The -9385 Number;

          ii.  Email address Kidfr3sh20@gmail.com;

          iii. Snapchat Username @js_102; and

          iv.  Charter IP 104.174.146.86

     b.   According to Snap, Inc. records, Snapchat account @js_102 uses display name "Adrian"[9] and the -9385 Number.

    23.  I reviewed the return from Snapchat account @js_102 and observed the following:

     a.   I observed image files of a pre-pubescent male ("MV-2") engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256, including the following:

| File Name: | chat~media_v4~2025-04-11-06-28-33UTC~js_102~phm~9c467f64-0627-5f1c-b55a-0a6bab60f0e8-253~v4.jpeg |
|---|---|
| Description: | The image file depicts MV-2 asleep on a bed wearing Christmas-themed pajama pants. MV-2's legs are pushed up and his pants have been pulled down to expose his anus and the bottom part of his scrotum.[10] |
| File Name: | chat~media_v4~2025-04-10-04-24-17UTC~js_102~jjpimpster~unsaved~b~ChdyMHRLVmpjTzY3VjlFMmlYSG04YmxfMRliEhVyMHRLVmpjTzY3VjlFMm |

---

    [9] Based on my law enforcement experience, I am aware that a display name is the name that other users see when they message each other.  It can be changed anytime and, unlike a username, is not unique.

    [10] Based on my review, this image appears to be a visually identical image to the file included in the April 2025 Snapchat CyberTipline Report #209215659.

| | lYSG04YmwyAVplAVAEYAFwAg~v4.jpeg [HEREINAFTER "MV-2 CSAM Image"] |
|---|---|
| Description: | The image file depicts MV-2 asleep on a bed wearing the same Christmas-themed pajama pants that are pulled down to expose his penis. |

b.    I also observed a chat conversation between GONZALEZ and Snapchat account @jjpimpster, where they exchanged messages discussing the sexual exploitation of a minor and GONZALEZ sent numerous image files, including the images described above.  The conversation was initiated by GONZALEZ on April 9, 2025, and continued until GONZALEZ's account was shut down on April 11, 2025.[11]  Below are excerpts of the conversation.

i.    From April 9, 2025:

| js_102 | What do you know besides camp |
|---|---|
| jjpimpster | That you watch them at home sometimes hehe |
| js_102 | You know that too |
| jjpimpster | 👀 |
| js_102 | So I have to show those boys I watched?[12] |
| Jjpimpster | What have you done with them at home 😊 |

[11] At the time of the CyberTipline Report from SnapChat, SnapChat shut down the @js_102 account, therefore all chats end at that time.

[12] Based on conversations like this in which GONZALEZ offers to send photographs of minors in his care, law enforcement believes there is a fair probability that he has intentionally obtained custody of minor children for the purpose of creating sexually exploitative visual depictions of them.

| js_102 | Do I have to say |
|---|---|
| jjpimpster | Or you can show me 😮 |
| js_102 | If I really have to |

ii.  From April 10, 2025:

| jjpimpster | How big is his d👀 👀 |
|---|---|
| js_102 | Idk<br><br>*js_102 sent an image file showing MV-2 lying face down, apparently asleep, with his pants pulled down and his anus exposed.* |
| jjpimpster | Do you have a picture of it? |
| js_102 | *js_102 sent the image file discussed above, MV-2 CSAM Image* |
| jjpimpster | Mmm 😵<br><br>Did you play with it at all 😵 |
| js_102 | No |
| jjpimpster | How did you not 😵 |
| js_102 | IDK<br><br>I was only told to take photos |
| jjpimpster | Still lol |
| js_102 | Yeah I was only told to take pics |
| jjpimpster | I see I see |
| js_102 | Ya |
| jjpimpster | I wouldn't have been able to help myself 😵 |

| js_102 | Will I need to do more than take photos the next time I watch a boy? |
| jjpimpster | Yes |
| js_102 | What will I need to do? |
| jjpimpster | The same stuff, and play with it to |
| js_102 | So I just need to touch it? |
| jjpimpster | Ya 😬 |
| js_102 | Ok that's it right |
| jjpimpster | Yes like jerk him a little 😮 and the same stuff as before. |
| js_102 | Oh ok |

iii. From April 11, 2025:

| Jjpimpster | Do you have anymore pictures of boys |
| js_102 | Like the boy I watched? |
| jjpimpster | Yeah<br><br>How many boys have you watched and taken pictures of |
| js_102 | Just a few |
| Jjpimpster | Send me some of another one |

c.    I also observed a conversation on Snapchat dated April 10, 2025, between js_102 and a user whose screen name appears to be their true name, henceforth "M.H.", in which M.H. shared a photo of two people and sent the message, "Three years ago."  Based on my review of GONZALEZ's publicly available

Instagram and YouTube accounts, one of the two people in the image appears to be GONZALEZ.

24.   On October 24, 2025, LAPD ICAC Officer Powers and I met with the mother of MV-2.[13]  During her interview, she identified GONZALEZ as a long-time babysitter for her two minor sons, including MV-2, from in or around 2021 through in or around 2022.  She confirmed the photos of MV-2 from GONZALEZ's SnapChat were of MV-2, and she estimated his age as about seven in the photos.  She said that GONZALEZ traveled with her and her sons to provide childcare when she traveled for work, including on overnight trips to Lake Arrowhead and Palm Springs, California.  MV-2's mother ended the relationship with GONZALEZ when MV-2 disclosed to her that he thought GONZALEZ had touched his penis.

25.   MV-2's mother provided me with GONZALEZ's Venmo profile, which she had previously used to send babysitting payments to him.  I have reviewed GONZALEZ's Venmo profile and, as of August 2025, he has received payments from individuals with descriptions that appear to indicate he is engaged in babysitting-type activities, such as "[name redacted] play" or "[name redacted] 🏀".

---

[13] Law enforcement used the Clearview AI database to obtain an investigative lead as to MV-2's identity based on the images of MV-2 in GONZALEZ's Snapchat account.  The Clearview AI database is an artificial intelligence-enabled facial recognition technology software used to conduct victim identifications.

**D.  GONZALEZ Runs a Childcare Program, Has a Long History of Providing Childcare, and Has Recently Applied to Childcare Programs in Nevada**

26.  Based on my conversations with LAPD ICAC Officer Powers, I am aware that, on October 17, 2025, LAPD obtained a California State search warrant for the following Google account kidfr3sh20@gmail.com, associated with GONZALEZ.

27.  I reviewed the Google search warrant return information and observed the following:

a.  I observed two thumbnail photos that depict professional resumes with GONZALEZ'S full name at the top, as well as phone -9385 listed for GONZALEZ on one of them. GONZALEZ lists a "Child Care Center Teacher Certification" on his resume, as well as multiple work experiences including childcare, youth after school programs, and as a summer camp teacher.[14]

b.  I observed multiple recent emails detailing GONZALEZ's application for employment at places that would provide access to children, including a preschool soccer program, Boys & Girls Club of Southern Nevada, and an elementary school in Las Vegas, Nevada.  On one of his applications, GONZALEZ provided the address 3508 Autumn Rain Court, Las Vegas, Nevada 89147.

---

[14] HSI and LAPD ICAC were made aware of a Yale University Police Department incident report (Report #2017-02547) regarding GONZALEZ'S employment at the Summer Institute for the Gifted (SIG) at Yale University in 2017. According to the report, the SIG program consisted mostly of 12- to 14-year-olds and GONZALEZ was fired for taking underage students on unauthorized trips off school grounds and engaging in personal messaging with students. This employment was not listed on either resume found in the Google search warrant return.

c.    I also observed numerous email receipts from FlixBus and various airlines showing frequent travel between Los Angeles, California, and Las Vegas, Nevada, with the most recent travel via FlixBus from Los Angeles, California, to Las Vegas, Nevada on October 5, 2025.

28.    I am also aware that GONZALEZ is the Chief Executive Officer of Let's Play LA LLC based on my review of its publicly available website.  According to its website, Let's Play LA LLC provides childcare services in Los Angeles and is a community-driven organization dedicated to creating a space where kids can explore, connect, and grow through active engagement and play. Among its services, it offers, after-school enrichment programs, camps, and events for small groups of kids.

**E.    California State Law Enforcement Arrests GONZALEZ and Finds CSAM on his Phone, Including of MV-2**

29.    On October 24, 2025, LAPD ICAC obtained a state arrest and search warrant for GONZALEZ for violations of California Penal Code 311.11(a) (possession of child pornography), took GONZALEZ into custody, and seized the SUBJECT DEVICES from his person and his backpack on his person.  SUBJECT DEVICES 1-3 were found on his person and SUBJECT DEVICE 4 was found in his backpack.

30.    That evening, LAPD ICAC Officer Powers and I conducted a Mirandized interview of GONZALEZ, who confirmed that he uses the SnapChat account @js_102, the -9385 Number, and the "kidfr3sh20" email addresses.

31.   GONZALEZ positively identified MV-2 from reviewing a cropped version of one of the images located on SnapChat account js_102 and confirmed he had taken photographs of MV-2's exposed penis on multiple occasions prior to the end of 2022.  GONZALEZ also confessed to producing CSAM of approximately five other male minor victims, including a minor male victim ("MV-3") that he identified from a photograph on SUBJECT DEVICE 1.  GONZALEZ also confessed to touching MV-3's penis.

32.   During the arrest, GONZALEZ provided his passcodes to the arresting officers for SUBJECT DEVICES 1-3.  I conducted a preliminary review of SUBJECT DEVICES 1 and 2.  On SUBJECT DEVICE 1 and SUBJECT DEVICE 2, GONZALEZ possessed numerous images and videos portraying CSAM, including images and videos of MV-2 and MV-3.  On some of the images and videos containing CSAM, GONZALEZ's hands and/or face are visible.[15]  Specifically, I observed the following on SUBJECT DEVICE 1:

a.   A folder titled "babysitting boyz" that contained a video file of a nude minor male sitting on a bathroom floor.[16]

b.   A file identified on the phone as "IMG_9329," which appears to be an image of MV-2 with his penis fully exposed.  This image was one of more than 10 images of MV-2 on

---

[15] I observed GONZALEZ's hands during and after his interview and compared those with hands seen in the images and videos on the devices, and they appeared to be a match.

[16] This folder contained CSAM images and videos from what appear to be multiple possible victims.  The male minor in this video appears similar to MV-1, but it is not yet confirmed.

SUBJECT DEVICE 1 with his genitalia and/or buttocks exposed.[17]
These images are visually similar to the images GONZALEZ shared
in his SnapChat conversation with @jjpimpster in April 2025.

     c.    A file identified on the phone as
"1046699501636361694," which is a 1-minute and 27-second video
of MV-3 sleeping while a hand that appeared to belong to
GONZALEZ pulled down MV-3's pajama pants and touched and rubbed
MV-3's penis.

## IX. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[18]

45.  As used herein, the term "digital device" includes the
SUBJECT DEVICES.

46.  Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I
know that the following electronic evidence, inter alia, is
often retrievable from digital devices:

     a.    Forensic methods may uncover electronic files or
remnants of such files months or even years after the files have

---

[17] I also observed multiple images of MV-2 that do not
contain CSAM, showing frequent times where MV-2 was in
GONZALEZ's care.

[18] As used herein, the term "digital device" includes any
electronic system or device capable of storing or processing
data in digital form, including central processing units;
desktop, laptop, notebook, and tablet computers; personal
digital assistants; wireless communication devices, such as
telephone paging devices, beepers, mobile telephones, and smart
phones; digital cameras; gaming consoles (including Sony
PlayStations and Microsoft Xboxes); peripheral input/output
devices, such as keyboards, printers, scanners, plotters,
monitors, and drives intended for removable media; related
communications devices, such as modems, routers, cables, and
connections; storage media, such as hard disk drives, floppy
disks, memory cards, optical disks, and magnetic tapes used to
store digital data (excluding analog tapes such as VHS); and
security devices.

been downloaded, deleted, or viewed via the Internet.  Normally,
when a person deletes a file on a computer, the data contained
in the file does not disappear; rather, the data remain on the
hard drive until overwritten by new data, which may only occur
after a long period of time.  Similarly, files viewed on the
Internet are often automatically downloaded into a temporary
directory or cache that are only overwritten as they are
replaced with more recently downloaded or viewed content and may
also be recoverable months or years later.

b.   Digital devices often contain electronic evidence
related to a crime, the device's user, or the existence of
evidence in other locations, such as, how the device has been
used, what it has been used for, who has used it, and who has
been responsible for creating or maintaining records, documents,
programs, applications, and materials on the device.  That
evidence is often stored in logs and other artifacts that are
not kept in places where the user stores files, and in places
where the user may be unaware of them.  For example, recoverable
data can include evidence of deleted or edited files; recently
used tasks and processes; online nicknames and passwords in the
form of configuration data stored by browser, e-mail, and chat
programs; attachment of other devices; times the device was in
use; and file creation dates and sequence.

c.   The absence of data on a digital device may be
evidence of how the device was used, what it was used for, and
who used it.  For example, showing the absence of certain

26

software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

      d.  Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    47.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

      a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

      b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

48.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## X.  CONCLUSION

49.   For all the reasons described above, there is probable cause to believe that GONZALEZ violated Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.


                              _____/s/_____
                              Victoria J. Scott, Special
                              Agent, Homeland Security
                              Investigations

Subscribed to and sworn before me
this 27th day of October, 2025.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE



_____


//
//
//
//
//

PERKINS PROTOCOL

The magistrate judge has viewed
the images described in paragraph
32, above, that the affiant
alleges are lascivious and,
thereafter, placed them inside a
sealed envelope and initialed
across the seal.  The affiant has
taken custody of the envelope and
will maintain custody until all
appeals have been exhausted.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE